UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AZIBO AQUART                                        Crim. No. 3:26CV65 (SRU)

v.

UNITED STATES OF AMERICA                        July 13, 2026

**GOVERNMENT'S MOTION FOR A HEARING AND FURTHER RELIEF UNDER LOCAL RULE 83.5**

The United States respectfully requests that this Court schedule a hearing regarding improper communications with trial jurors undertaken by Aquart's counsel, in violation of Local Rule 83.5 and without the notice required under law, and issue an order prohibiting further such defense communications with members of the jury absent supervision by the Court.

## I. Factual Background

On May 23, 2011, a jury found Aquart guilty of murdering three people—Tina Johnson, James Reid, and Basil Williams—and returned a sentence of the death penalty. In 2018, the Second Circuit affirmed all of Aquart's convictions (for VICAR murder, drug-related murder, and conspiracy to commit murder in aid of racketing), but vacated the death penalty. Thereafter, the government withdrew its notice of intent to seek the death penalty, and, in 2021, Aquart was sentenced on remand principally to life imprisonment, the mandatory minimum sentence. Before his resentencing, Aquart filed another round of motions seeking dismissal of all counts of conviction, which was denied by the district court and (once again) the denial was affirmed by the Second Circuit in 2024. Since then, Aquart has filed multiple motions for compassionate release. He has also filed a petition under 28 U.S.C. § 2255 in the instant matter and, after multiple extensions of time, is set to file an amended petition today, July 13, 2026.

The government has now learned that, in connection with the instant habeas petition, Aquart's counsel has hired investigators to contact most or all of the members of the trial jury who convicted Aquart on all counts in 2011. The government also just learned that multiple jurors have apparently reached out to the clerk's office or the U.S. Marshal Service to express their deep concern and distress that they were tracked down by defense counsel. In particular, to the government's knowledge, at least four jurors have reached out to report that defense investigators have tracked them down to their private homes. One juror reported to the USMS that the defense investigators posed circular questions, seemingly in an effort to get her to change her answers. In particular, the defense investigators reportedly asked questions about the length of the jury's deliberation, whether that juror felt that any jurors knew more than they let on, and whether that juror had ever been to the crime scene herself. One of the investigators reportedly provided a business card with contact information for a prior position at the Maryland Federal Defender's Office that the investigator no longer held, with an apparently inaccurate address.

Multiple jurors were reportedly so disturbed by the defense inquiry that they contacted the local police, with one calling at least three times. One juror specifically expressed fear that she was in danger.

Upon learning this information, the undersigned reached out to defense counsel, who does not practice in this district. She confirmed that jurors were "interviewed as part of the 2255 investigation" by interviewers hired by defense counsel. The undersigned asked how many jurors were contacted, why they were contacted, and what was asked of them. Defense counsel refused to answer, citing purported protections under the attorney-client and work product privileges. Nonetheless, defense counsel acknowledged that "many" of the contacted jurors were "concerned about how we got their information," and multiple jurors said that they did not wish to be contacted

again or otherwise wished to conclude the interview.

## II. Legal Standard

Supreme Court precedent instructs that the finality of jury verdicts and the protection of jurors from post-verdict harassment and intrusive inquiry are "long-recognized and very substantial concerns." *Tanner v. United States*, 483 U.S. 107, 127 (1987); *id.* at 120-21 ("[F]ull and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct."). Even if "postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior," the Supreme Court counsels that it must not be undertaken, because "[i]t is not at all clear . . . that the jury system could survive such efforts to perfect it." *Id.* at 120. For this reason, the common law, the Constitution, and federal statutes (such as Federal Rule of Evidence 606(b)) do not permit impeachment of a verdict by juror testimony except under highly circumscribed circumstances. *Id.* at 121.

Those highly circumscribed circumstances require, at the threshold, a specific, non-speculative, clear, incontrovertible showing of impropriety and prejudice. As the Second Circuit has instructed, "probing jurors for 'potential instances of bias, misconduct or extraneous influences' after they have reached a verdict is justified 'only when reasonable grounds for investigation exist,' in other words, where there is 'clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial.'" *United States v. Stewart*, 433 F.3d 273, 302–03 (2d Cir. 2006) (citing *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983) and *King v. United States*, 576 F.2d 432, 438 (2d Cir. 1978) (cleaned up)).

And even when such "clear, strong, substantial and incontrovertible evidence" of a "specific,

nonspeculative" and "prejudicial" "impropriety" exists, it is the trial judge, and not defense counsel, who must lead or at least authorize the inquiry. In particular, Second Circuit case law requires that "[a]t a minimum," defense counsel must give "notice to opposing counsel and the court" before post-trial questioning of jurors "in all cases." *United States v. Moten*, 582 F.2d 654, 665-66 (2d Cir. 1978). As the Second Circuit has noted,

> complicity by counsel in a planned, systematic, broad-scale, posttrial inquisition of the jurors by a private investigator or investigators is reprehensible, to say the least. The trial court was correct in stating . . . that where a full dress inquiry of this sort was intended to be launched, 'post-trial questioning of jurors must only be conducted under the strict supervision and control of the court, with inquiry restricted to those matters found by the court as both relevant and proper.

*United States v. Brasco*, 516 F.2d 816, 819 (2d Cir. 1975) (cleaned up).

Accordingly, the Second Circuit has consistently applied the "requirement that at a minimum, notice to opposing counsel and the court should be given in all cases before engaging in any post-verdict inquiry of jurors," to guard against the "serious danger" that "in the absence of supervision by the court, some jurors, especially those who were unenthusiastic about the verdict or have grievances against fellow jurors, would be led into imagining sinister happenings which simply did not occur or into saying things which, although inadmissible, would be included in motion papers and would serve only to decrease public confidence in verdicts." *United States v. Schwarz*, 283 F.3d 76, 98 (2d Cir. 2002) (cleaned up); *see also United States v. Gagnon*, 282 F. App'x 39, 40 (2d Cir. 2008) ("Gagnon's post-verdict contact with the former juror was wholly inappropriate. Gagnon's lawyer commenced his investigation without giving notice to either the court or to opposing counsel." (citing *Moten,* 582 F.2d at 665-66)).

In accordance with these background precepts, District of Connecticut Local Rule 83.5(1), concerning the "secrecy of jury deliberations," provides as follows, in relevant part:

> (c) Unless explicitly authorized by the Court, no party, and no attorney or person

> acting on behalf of a party or attorney, shall question a juror concerning the deliberations of the jury, votes of the jury or the actions or comments of any other juror. (d) No person may contact, communicate with or interview any juror in any manner which subjects the juror to harassment, misrepresentation, duress or coercion.

By its plain terms, the Rule prohibits any questioning of jurors about deliberations, votes, actions, or comments, "[u]nless explicitly authorized by the Court." [1] *See generally United States v. Constantinou*, No. 3:11-CR-192 JCH, 2014 WL 4385435, at *7 (D. Conn. Sept. 2, 2014), *aff'd*, 634 F. App'x 316 (2d Cir. 2016) (finding that Local Rule 83.5 is constitutional and consistent with the Supreme Court's limitations). Rule 83.5(4) also provides that "[t]he Court shall have continuing supervision over communications with jurors, even after a trial has been completed." Furthermore, under Rule 83.5(4), "[a] violation of this rule may be treated as a contempt of Court."

**III. Discussion**

The government respectfully requests a hearing to inquire further into the un-noticed, un-authorized, and what appears to be unlawful post-verdict communication with jurors.

First, defense counsel's communication with the trial jurors plainly violates the Second Circuit rule requiring "[a]t a minimum," "notice to opposing counsel and the court" before post-trial questioning of jurors "in all cases." *Moten*, 582 F.2d at 665-66. No such notice was given here to opposing counsel, and none was given to the Court, to the government's knowledge.

Second, defense counsel's communication with the trial jurors almost certainly violates Local Rule 83.5(1)(c), which prohibits any party from "question[ing] a juror concerning the deliberations of the jury, votes of the jury or the actions or comments of any other juror"—"[u]nless explicitly authorized by the Court." The instant defense investigation was not explicitly authorized by the

---

[1] In communications with defense counsel, the undersigned brought Local Rule 83.5 to her attention. Defense counsel indicated that the Local Rule was "admittedly restrictive" and represented that she "checked the local rules before I sent folks out to interview jurors."

Court. Although defense counsel has refused to answer the government's inquiry about what was asked of the jurors, it is hard to imagine any questions that would not impermissibly touch upon "the deliberations of the jury, votes of the jury or the actions or comments of any other juror." Indeed, one juror reported just those sorts of impermissible questions, including—in her own words—questions about "the length of the jury's deliberation" and "whether I felt any jurors knew more than they let on."

Third, it is possible that defense communications with the trial jurors ran afoul of Local Rule 83.5(1)(d), which prohibits any party from "contact[ing], communicat[ing] with or interview[ing] any juror in any manner which subjects the juror to harassment, misrepresentation, duress or coercion." Multiple jurors (all of whom voted to convict Aquart) have reported feeling fear and distress upon being contacted by defense counsel at their private homes and some have even contacted police after the unwanted approach. Their fear is understandable given that Aquart was convicted of bludgeoning three people to death in premeditated fashion—a circumstance that speaks all the more to the necessity of court supervision, which Aquart has effectively circumvented.

Fourth, in addition to failing to provide the required notice, Aquart has not—and cannot—demonstrate the sort of "clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial.'" *Stewart*, 433 F.3d at 302–03 (cleaned up). This is a threshold inquiry that must be satisfied before any approach to jurors, which Aquart has entirely failed to even attempt. In fact, no such showing can possibly be made. Over 15 years of active litigation have passed since Aquart's conviction, including multiple rounds before both district and circuit courts. Over a decade of defense effort has failed to turn up the sort of evidence that could even potentially warrant juror contact. Perhaps recognizing as much, Aquart simply ignored

this legal requirement, in order to conduct his own impermissible "fishing expedition." *Id.* at 306 (quoting *United States v. Sun Myung Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983) (cleaned up)).

Finally, and accordingly, this Court should disregard—and indeed, should strike from the record—any representations that come out of Aquart's unlawful contact with the trial jurors. Although the government is not aware yet of whether, and to what degree, Aquart intends to cite these communications in his amended petition, due today, defense counsel has represented that these communications were undertaken as part of the "2255 investigation." Additionally, Aquart's earlier-filed motion to seal the forthcoming amended petition notes that the petition will "contain[] private information about jurors . . . ." *See* Dkt. 19 at 1. It is thus fair to assume that Aquart will cite certain self-serving and unreliable statements purportedly from trial jurors in support of his instant petition. According to reports from the jurors themselves, there is good reason to believe that the questions—which should never have been posed in the first place, absent court supervision—were specifically framed to create a wholly unwarranted appearance of impropriety. Indeed, one juror reported that the defense investigator "kept repeating the same questions in a circular manner, seemingly trying to get me to change my answers." This unlawful effort by the defendant should not be countenanced by the Court.

## IV. Conclusion

For the reasons set forth herein, and pursuant to this Court's "continuing supervision over communications with juror, even after a trial has been completed," the government respectfully requests a hearing to determine whether defense communications with trial jurors constituted a violation of Local Rule 83.5 and related Second Circuit law. Moreover, the government requests that the Court advise defense counsel to immediately cease communication with jurors unless and until it can satisfy the threshold inquiries and receive authorization by the Court. Finally, the government respectfully requests the Court to disregard and strike any representations purportedly arising from unlawful communications already conducted with the trial jury.

Respectfully submitted,

DAVID X. SULLIVAN
UNITED STATES ATTORNEY

*/s/*
ELENA L. CORONADO
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. phv09758
1000 LAFAYETTE BLVD., 10TH FLOOR
BRIDGEPORT, CT 06604
(203) 696-3000
elena.coronado@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2026, a copy of the foregoing Memorandum Opposing Compassionate Release was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Elena L. Coronado*

ELENA L. CORONADO
ASSISTANT U.S. ATTORNEY