UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AZIBO AQUART                                    Crim. No. 3:26CV65 (SRU)

v.

UNITED STATES OF AMERICA                        August 10, 2026

**GOVERNMENT'S OPPOSITION TO *EX PARTE* MOTION AND REPLY
MEMORANDUM IN SUPPORT OF A HEARING AND RELIEF
UNDER LOCAL RULE 83.5**

On July 13, 2026, after learning of improper and unlawful defense communications with trial jurors, the government filed a motion seeking a hearing and further relief under Local Rule 83.5 and relevant Second Circuit law. *See* Dkt. 24. On August 3, 2026, defense counsel filed an opposition brief and an accompanying motion to file Exhibits C and D—which apparently contain summaries of the relevant juror communications—*ex parte* and under seal. *See* Dkts. 25 and 26. The government respectfully submits this reply memorandum in response to defense counsel's August 3 filings and in opposition to the motion to file the key exhibits *ex parte*.[1]  The defendant's filing mischaracterizes the law on notice and court supervision of post-trial juror communications and conceals what is perhaps the most salient fact at issue here: what questions, exactly, defense investigators posed to jurors that could possibly comply with the strict limitations set forth in Local Rule 83.5. The defendant has offered no valid basis for concealing the substance of the very juror communications at issue. Moreover, the attempt to hide this information demonstrates even further the need for a hearing and the other relief sought by the government.

---

[1]  On August 5, 2026, the Court granted the defendant's motion to seal Exhibits C and D, to which the government, at this time and having not seen the documents, does not object. *See* Dkt. 28. But the Court has not acted on the aspect of the defendant's motion seeking to file those exhibits *ex parte*.

## I.     The defense motion to file Exhibits C and D *ex parte* should be denied

On August 3, 2026, the defendant filed an opposition brief to the government's motion under Local Rule 83.5, accompanied by four exhibits. Dkt. 25. According to the brief, Exhibit C is a declaration by defense counsel Monica Foster, setting forth the "qualifications of investigators" and "summarizing juror interviews." *Id.* at 7, 9, 10. According to a docket entry, Exhibit D (which is not described in the brief) contains an "email chain re: juror contact." Dkt. 27. Neither Exhibit C nor Exhibit D was filed in readable form on the docket or transmitted separately to government counsel.

In an accompanying motion also filed August 3, 2026, the defendant sought permission to file Exhibits C and D to his opposition brief *ex parte* and under seal. Dkt. 26. That motion consists of three sentences, only one of which lays out the purported basis for the request, as follows: "The documents contain privileged work product material that the government has no right to know at this stage of the proceedings."[2]  *Id.*

The motion for *ex parte* treatment of the critical information relevant to the government's motion is baseless and should be denied.

As an initial matter, the defendant cites no law—either statutory or case law—in support of his one-sentence request. This deficit alone seriously undermines his request, since in our adversarial system "*ex parte* motions are disfavored." *Ayestas v. Davis*, 584 U.S. 28, 40 (2018). In those limited circumstances in which such motions "have their place," their *ex parte* nature is typically authorized by statute (*e.g.*, for search warrants, wiretap applications, witness subpoenas, etc.), *see id.*, and/or arise in circumstances in which notice "serve[s] only to render fruitless further

---

[2]  This purported basis echoes the one offered by email to undersigned counsel, who asked how many jurors were contacted and what questions were asked of them. *See* Dkt. 25, Exhibit A, at 2 ("I cannot give you the information you seek as it is protected by the attorney client and work product privileges.").

prosecution of the action," *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979) (analyzing civil *ex parte* filings). Neither circumstance is present here.

Moreover, the defendant does not—and cannot—explain why "privilege[]" or "work product" protections should apply here. Dkt. 26 at 1. His counsel's communications with jurors patently fall outside any definition of attorney-client privilege. So too with work product protections. To be sure, Fed. R. Crim. P. 17 permits a defendant to seek trial subpoenas *ex parte* to avoid prematurely "disclos[ing] his whole case to the Government before his trial." *United States v. Hang*, 75 F.3d 1275, 1281 (8th Cir. 1996) (discussing a defendant's wish to avoid revealing "the defense's trial strategy") (cleaned up). But this rationale is irrelevant here. Aquart's trial concluded over 15 years ago, and he offers no legal basis for the need to keep secret a defendant's "strategy" in the vastly different context of collateral attack under 18 U.S.C. § 2255— which, after all, is intended to afford relief in those extraordinary cases where a defendant was unconstitutionally convicted or is actually innocent (facts a defendant would presumably wish to broadcast, not hide). But even if this rationale *were* to be extended to the instant habeas petition, that petition has now been filed, and the defendant's strategy is thus apparent to the government.

Most importantly, as discussed further below, the government contends that defense questioning of jurors ran squarely afoul of the precepts of Local Rule 83.5, which strictly limits the questions that may be asked, and Second Circuit law, which requires pre-communication notice to the Court and the government (irrespective of the wish to keep any defense habeas "strategy" secret). The questions posed to the jurors are thus at the very heart of the instant dispute. The defendant should not be permitted, without reliance on any authority, to conceal these questions from opposing counsel (who should have been informed in advance of any questioning) in an apparent effort to hide what, according to juror reports, may well have been violations of law.

At bottom, the pending motion is an improper use of *ex parte* procedure to end-run Local Rule 83.5. It should be denied.

**II.     In light of the improper defense communications with jurors, the government's motion for a hearing and other relief under Local Rule 83.5 should be granted**

The law protecting jurors from post-verdict harassment and intrusive inquiry is set forth at greater length in the government's opening motion. *See* Dkt. 24. As explained therein, the Second Circuit requires notice to opposing counsel and the court *before* counsel approaches any jurors, and the Local Rules strictly limit the substance of any post-trial communications with jurors. *See id*. Defense counsel plainly violated the pre-communication notice requirement, and—based on juror reports, *see* Sealed Exhibit 1—also likely violated the substantive limitations set forth in the Local Rule.

In his opposition brief, the defendant now claims that the interviews were "routine" and compliant with the law—while simultaneously seeking to shield the content of the interviews from government attention. Dkt. 25 at 2. The defendant both improperly conceals the facts and mischaracterizes the applicable law.

As an initial matter, the defendant relies heavily on commentary to ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases to argue that post-trial communications with jurors are "required as part of constitutionally adequate lawyering." Dkt. 25 at 2. This is both irrelevant and, in any event, does not support the defense position. First, as the defendant acknowledges, the instant case is not a capital case, and thus whatever ABA Guidelines might apply to the capital context are not germane here. *See id.* Second, the ABA is a private, professional association, and its Guidelines self-evidently do *not* carry force of law. Accordingly, insofar as they conflict with actual law—such as local rules or case law promulgated by the Second Circuit regarding juror communications—the ABA Guidelines are superseded by,

and must yield to, the law. Finally, however, the ABA Guidelines are a red herring. If, as is now claimed, defense counsel believed that it could not provide constitutionally adequate assistance of counsel without interviewing jurors (per counsel's interpretation of commentary to the ABA Guidelines), counsel could (and should) have provided the required notice to opposing counsel and the Court beforehand, at which time the court could have addressed the matter and resolved disputes, if any. Therefore, compliance with counsel's maximalist interpretation of the commentary to the ABA Guidelines is not inherently at odds with the applicable law in this circuit and district.

The defendant attempts in vain to circumvent binding Second Circuit case law that directly prohibits the un-noticed and un-authorized contact here. The Second Circuit set forth this rule plainly in *United States v. Moten*, when it instructed "[a]t a minimum" that "notice to opposing counsel and the court should be given in all cases." 582 F.2d 654, 665-66 (2d Cir. 1978). The defendant's attempt to distinguish "should" from "must" represents a distinction without a difference. The *Moten* opinion used both "should" and "must" to describe action that is required. Moreover, the *Moten* court instructed that notice to opposing counsel and the court was required "at a minimum" and "in all cases." *Id.* This language does not imply optional acquiescence. Pre-communication notice is not a mere "suggestion," as the defense would have it. *See* Dkt. 25 at 6. It is mandatory.

*Moten*'s holding was also entirely consistent with its prior "dictum" in *United States v. Brasco* that "complicity by counsel in a planned, systematic, broad-scale, posttrial inquisition of the jurors by a private investigator or investigators is reprehensible, to say the least." *Moten*, 582 F.2d at 665 (quoting *United States v. Brasco*, 516 F.2d 816, 819 n.4 (2d Cir. 1975) (cleaned up)). *Moten* also noted with approval *Brasco's* commentary that "[t]he trial court was correct in stating . . . that where a full dress inquiry of this sort was intended to be launched, post-trial questioning of jurors must only

5

be conducted under the strict supervision and control of the court, with inquiry restricted to those matters found by the court as both relevant and proper." *Moten*, 582 F.2d at 665 (citing *Brasco*, 516 F.2d at 819 n.4) (cleaned up).

The defendant now contends that *Brasco*'s commentary about judicial control of the actual communication with jurors was mere "dictum." *See* Dkt. 25 at 5. But even if true, *Moten* expressly held that pre-communication *notice* was mandatory. Perhaps, after *Moten*, there might be room for counsel, rather than the court, to undertake the questioning of jurors. But even if so, under *Moten*, notice must be given beforehand. Defense counsel failed to comply with this binding rule.

The defendant claims that because the wording of the ABA Guidelines and Local Rules later changed, he need not comply with the Second Circuit's statement of the law. This is wrong. First, as already discussed, the ABA Guidelines have no force of law themselves and must of course yield to binding law promulgated by the Court of Appeals. So too must the Local Rules, which cannot supersede law promulgated by the Second Circuit. Moreover, nothing in the Local Rules actually permits the un-noticed communication that occurred here. Finally, the defendant makes much of the fact that the Local Rules were revised in 2007. *See* Dkt. 25 at 6-8. That change has no bearing whatsoever on the requirements here. Indeed, the Second Circuit reiterated the continuing vitality of the notice rule in 2008—the year *after* the 2007 revision to the Local Rules—in *United States v. Gagnon*, 282 F. App'x 39, 40 n.1 (2d Cir. 2008) (summary order). In *Gagnon*, the Court cited *Moten*'s statement of the requirement that, "[a]t a minimum . . . we think notice to opposing counsel and the court should be given in all cases." *Id.* (citing *Moten*, 582 F.2d at 665-66). Moreover, the *Gagnon* Court found that the defendant's "post-verdict contact with the former juror was wholly inappropriate," because "Gagnon's lawyer commenced his investigation without giving notice to either the court or to opposing counsel." *Id.* So too here.

6

The defendant also fails to distinguish the case law requiring a threshold evidentiary showing before permitting juror communications. *See* Dkt. 25 at 8 (citing *United States v. Stewart*, 433 F.3d 273, 302-03 (2d Cir. 2006), *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983), and *King v. United States*, 576 F.2d 432, 438 (2d Cir. 1978)). While *Stewart*, *Moon*, and *King* may have had occasion to consider the need for a hearing specifically, they also discussed more broadly the law regarding what may justify "post-trial scrutiny," *Stewart*, 433 F.3d at 302, "investigation," *Moon*, 718 F.2d at 1234, or "post-verdict inquiry" writ large, *King*, 576 F.2d at 438. Moreover, *Stewart* and *Moon* cite *Moten* to establish the requisite standard (*King* did not cite *Moten* because it pre-dated *Moten*). And *Moten* makes plain that the same threshold evidentiary showing must be met to authorize an investigation in the first place. *Moten*, 582 F.2d at 665-66 (discussing "the entire subject of post-verdict interrogation of jurors," not merely hearings, and calling for "a showing warranting an investigation"). *Moten* noted with approval that judges "have rejected motions for post-trial interviews of jurors" where counsel only made a "frail and ambiguous showing" of impropriety, where there were "no specific allegations of improper acts," or where the "basis for request was speculation that impropriety might have occurred." *Id.* at 666-67 (cleaned up). As *Moten* instructed, "a convicted defendant should not be allowed to waste the time of a district judge or inconvenience jurors merely to conduct a fishing expedition." *Id.* at 667. In other words, according to *Moten* and its progeny, a threshold showing is required before investigation and interviews of jurors. And, of course, *Moten* requires the pre-communication notice that was absent here.

Finally, the defendant argues that his communications with jurors did not violate the content-based restrictions of Local Rule 83.5. *See* Dkt. 25 at 8-11. Because the defendant has filed the interview summaries under seal, the government has no way of knowing whether that self-serving representation is true. The defendant complains that the government conflates the result of the

interviews with the manner in which they were conducted. *See* Dkt. 25 at 11. But at the same time, the defendant refuses actually to provide the government with the results of the interviews—which refusal in itself suggests a serious possibility of violation.

Further, the government's position is not based on mere supposition. Troublingly, members of the jury have reported information constituting the direct violation of law, in contradiction of the defense's account. *See* Sealed Exhibit 1. Indeed, one juror reported that defense investigators asked about "the length of the jury's deliberation" and "whether I felt any jurors knew more than they let on." *See id.* These are questions that plainly violate Local Rule 83.5's prohibition on inquiries "concerning the deliberations of the jury, votes of the jury or the actions or comments of any other juror."

Ultimately, defense counsel could have pursued a post-trial inquiry by lawful means— including pre-communication notice to opposing counsel and the court, resolution of disputes, and prior consideration of the questions to be posed. Instead, counsel undertook an inquiry without notice, without approval, and in substantive violations of the rules. In so doing, the defense left members of the jury in reasonable fear that their jury service might have put them in real danger from a man whom they convicted of three brutal murders. *See* Sealed Exhibit 1.

For these reasons, and those set forth herein, the government respectfully opposes the defendant's motion for *ex parte* treatment of the interview summaries, reiterates its request for a hearing under Local Rule 83.5, and asks that the Court strike and disregard any representations purportedly arising from unlawful communications already conducted with the trial jury.

Respectfully submitted,

DAVID X. SULLIVAN
UNITED STATES ATTORNEY

*/s/ Elena L. Coronado*

ELENA L. CORONADO
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. phv09758
1000 LAFAYETTE BLVD., 10TH FLOOR
BRIDGEPORT, CT 06604
(203) 696-3000
elena.coronado@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2026, a copy of the foregoing Memorandum Opposing Compassionate Release was filed electronically and served by mail on anyone unable to accept electronic filing.   Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.   Parties may access this filing through the Court's CM/ECF System.

*/s/ Elena L. Coronado*

ELENA L. CORONADO
ASSISTANT U.S. ATTORNEY